IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIM. NO. 25-00217-KD |
| | * | |
| KARTARIUS DEWAN JOHNSON, | * | |
|   aka "TAREEQ AKHIL ANAD," | * | |
|   aka "TERRY BEYBE," | * | |
|   aka "TERRY FOSTER," and | * | |
| DANISHA ANITA FOSTER, | * | |
|   aka "DANI" | * | |

## UNITED STATES' TRIAL BRIEF

The United States, by and through Sean P. Costello, the United States Attorney for the Southern District of Alabama, respectfully files this trial brief in the above-captioned case. The trial of defendants Kartarius Dewan Johnson ("Johnson") and Danisha Anita Foster ("Foster") is set to commence on August 3, 2026. To minimize delay during trial, the United States has briefed several legal issues that may arise during trial.

## SUMMARY OF FACTS[1]

Johnson and Foster are romantic partners and coconspirators who subscribe to "sovereign citizen" ideology. So-called "sovereign citizens" believe "they are not subject to the jurisdiction of the courts and . . . frequently deny that they are the defendants in the action, instead referring to themselves as third-party intervenors. . . . Courts have been confronted repeatedly by their attempts to delay judicial proceedings and have summarily rejected their legal theories as frivolous." *United States* v. *Sterling*, 738 F.3d 228, 233 n.1 (11th Cir. 2013).

---

[1] The proffered summary of facts contains allegations only and does not set forth every fact that the United States anticipates presenting at trial.

1

In 2021, federal agents arrested Johnson for fraud and identity theft-related offenses in case number 1:21-cr-00142-TFM in the United States District Court for the Southern District of Alabama. Johnson was a federal inmate at the Escambia County Detention Center ("ECDC") in Brewton, Alabama, while his federal case was pending. In April 2023, following a jury trial, Johnson was convicted on all 16 counts of his indictment. In July 2023, U.S. District Judge Terry F. Moorer sentenced Johnson to serve a 231-month prison sentence and ordered Johnson to pay $1,910 in special assessments and restitution. *United States* v. *Johnson*, No. 1:21-cr-00142-TFM, Doc. 105 (S.D. Ala. July 19, 2023) ("*Johnson I*").

From July 2023 to October 2023, Johnson and Foster conspired to commit bank fraud while Johnson was held at ECDC in an attempt to secure Johnson's release from federal custody. Johnson and Foster coordinated with one another to draft fictitious, "sovereign citizen"-style documents and mail them to the Court and to the U.S. Secretary of State. Some of these packages included fictitious checks containing a routing number corresponding to the U.S. Treasury. Additionally, the Court relies on Hancock Whitney Bank for various financial transactions.

On at least four occasions during the conspiracy (July 25, September 28, October 11, and October 27), Foster mailed packages containing fictitious documents in coordination with Johnson. Foster mailed three packages to the Court, one of which the Court docketed shortly after Johnson's sentencing on July 13, 2023. *See Johnson I*, Doc. 111 (Johnson's notice of "indemnity bond," accompanied by a fictitious $9 million check). One package was addressed to the U.S. Secretary of State and mailed to the White House. Johnson and Foster wanted the packages' recipients to receive fraudulent documents and deposit fraudulent checks, triggering a financial transaction that would defraud financial institutions. In so doing, the recipients would supposedly enter into a binding contract with Johnson to obligate his release from jail.

Evidence of Johnson's and Foster's bank fraud conspiracy at trial will include, among other things, the mailed packages, recorded jail calls between Johnson and Foster discussing their plans to mail fictitious checks to the Court in furtherance of the scheme, and electronic communications between the two. Foster mailed two fictitious checks to the Court—one for $9 million (dated July 24, 2023), the other for $16 million (dated September 27, 2023)—as part of the conspiracy.

On October 12, 2023, agents with the Federal Bureau of Investigation ("FBI") collected a contraband phone from the Escambia County Sheriff's Office, which seized the device from ECDC. Johnson had no authorization to possess the device, which was found under his bed at ECDC. Subsequently, the FBI accessed the device and found phone evidence that Johnson had used the device—a prepaid AT&T phone—in violation of ECDC's rules between September 2023 and October 2023. The phone contained electronic communications (*e.g.*, text messages, emails, video chats) between Johnson and Foster regarding their bank fraud conspiracy and attempted bank fraud. The contraband phone also showed that Johnson was receiving illicit Cash App payments from Foster and others. On October 24, 2023 (*i.e.*, after law enforcement had seized Johnson's contraband phone on October 12, 2023), Johnson began texting Foster. These texts continued until December 2023, which coincided with Johnson's transfer to Bureau of Prisons custody.

On January 24, 2024, FBI agents obtained a warrant from the Court to seize and search Foster's iPhone. FBI executed the warrant the next day in Mobile, Alabama and seized the device, which contained evidence of the defendants' conspiracy. This evidence included electronic communications between Foster and Johnson (including email communications) and images of the contents of several packages containing fraudulent documents that Foster had sent to the Court and the U.S. Secretary of State.

3

Johnson used his Gmail accounts to email fictitious documents to Foster at her Gmail accounts and accessed Google Drive to edit documents that he shared with Foster. According to evidence from Foster's phone, Johnson used his Gmail accounts to email "bid bonds" to Foster to complete so they could mail the bid bond (and other fictitious documents) to the Court to secure Johnson's release from custody. Foster used her Gmail accounts to access and receive emails from Johnson that contained fraudulent documents in furtherance of their bank fraud conspiracy. Johnson used his Gmail accounts in connection with his Snapchat account on one or more contraband phone devices. Foster and Johnson exchanged text messages on one or more contraband devices from May 2023 to December 2023, while Johnson was incarcerated at ECDC.

Trial evidence will also show that from July 2021 to August 2021, Johnson also executed a scheme to defraud Bank of America and the Federal Reserve Bank in an attempt to fraudulently obtain two luxury vehicles—a 2019 Rolls Royce Cullinan and a 2021 Rolls Royce Ghost—from a luxury vehicle dealership in Houston, Texas. Emails and other evidence will show that Johnson (1) communicated with the dealership at various times about the purchase of the two vehicles; (2) transmitted a "letter of credit" in the amount of $825,000 to the Bureau of the Fiscal Service, U.S. Department of the Treasury, and to the Consumer Financial Protection Bureau seeking funds to pay for the two vehicles; (3) ordered checks and drafted a fictitious $825,000 check containing the Treasury's routing number as though the routing number corresponded to his own bank; and (4) deposited the fictitious check at Bank of America, where the dealership banked, into the dealership's Bank of America account number x0310. The fictitious check that Johnson deposited at Bank of America bore the same routing number and the same format as the bogus checks he and Foster sent to the Court in 2023. Johnson signed the check knowing that it was counterfeit and that he had insufficient funds for the financial transaction. After depositing the check, Johnson

communicated with the dealership at various times to confirm it had received the funds, including by sending the dealership a picture of the check and a Bank of America deposit receipt.

<u>**DISCUSSION**</u>

**A.      General Legal Analysis**

**1.      Count One – Conspiracy to Commit Bank Fraud (18 U.S.C. § 1349)**

To establish a conspiracy under 18 U.S.C. § 1349, the United States must prove the following elements beyond a reasonable doubt:

1)      two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit bank fraud, as charged in the indictment; and

2)      Johnson and Foster knew the unlawful purpose of the plan and willfully joined in it.

Pattern Crim. Jury Instr. 11th Cir. OI O54 (Dec. 2025).

A defendant's involvement in a conspiracy may be proven by direct evidence and circumstantial evidence. *United States* v. *Ramsdale*, 61 F.3d 825, 829 (11th Cir. 1995) ("Participation in a criminal conspiracy need not be proved by direct evidence; rather, a common purpose and plan may be inferred from a 'development and collocation of circumstances.'"); *United States* v. *Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998) (noting that the United States "need not demonstrate the existence of a 'formal agreement'"). In proving a conspiracy under Section 1349, the United States is not required to prove an overt act. *United States* v. *Feldman*, 931 F.3d 1245, 1258 (11th Cir. 2019) (citing *United States* v. *Gonzalez*, 834 F.3d 1206, 1220 (11th Cir. 2016)). As such, Eleventh Circuit law "prevents a defendant from raising withdrawal [as a defense] under a conspiracy statute that does not require proof of an overt act . . . ." Pattern Crim. Jury Instr. 11th Cir. OI O13.4 (Dec. 2025) cmt. (citing *United States* v. *Marolla*, 766 F.2d 457 (11th Cir. 1985)).

5

## 2.    Conspiracy – General Principles

"[E]very conspiracy is by its very nature secret; a case can hardly be supposed where men concert together for crime and advertise their purpose to the world." *United States* v. *Magluta*, 418 F.3d 1166, 1179 (11th Cir. 2005) (alteration in original) (quoting *Grunewald* v. *United States*, 353 U.S. 391, 402 (1957)). In other words, due to the nature of a criminal conspiracy, "there is rarely any direct evidence of any agreement to join a conspiracy, and thus, the defendant's assent can be inferred from acts that furthered the conspiracy's purpose." *United States* v. *Brenson*, 104 F.3d 1267, 1282 (11th Cir. 1997) (citing *United States* v. *Miller*, 693 F.2d 1051, 1053 (11th Cir. 1982)); *United States* v. *Hernandez*, 921 F.2d 1569, 1575 (11th Cir. 1991) (noting "secrecy is an essential element of conspiracy"). "The existence of a conspiratorial agreement may be established through either direct or circumstantial evidence, such as inferences from the conduct of the alleged participants." *Brenson*, 104 F.3d at 1282 (quoting *United States* v. *Farris*, 77 F.3d 391, 394 (11th Cir. 1996)); *United States* v. *Guerra*, 293 F.3d 1279, 1285 (11th Cir. 2002) (describing "concert of action" as sufficient to prove a conspiracy); *United States* v. *Hansen*, 262 F.3d 1217, 1246 (11th Cir. 2001) (noting that a conspiracy "may be inferred from the conduct of the participants or from other circumstances" beyond the acts of the coconspirators).

Coconspirators are vicariously liable for the criminal acts of each other that are committed "during the course and in the furtherance of the conspiracy, notwithstanding the party's non-participation in the offenses or lack of knowledge thereof." *Hansen*, 262 F.3d at 1246 (citing, *e.g.*, *Pinkerton* v. *United States*, 328 U.S. 640, 646–47 (1946)); *United States* v. *Silvestri*, 409 F.3d 1311, 1335–36 (11th Cir. 2005) ("Under well established Eleventh Circuit precedent conspirators are liable for *all of the acts and foreseeable consequences* of the conspiracy." (emphasis in original)). Similarly, the United States need not "prove that each conspirator participated in all aspects of a conspiracy, knew each phase or every detail of the conspiracy, or knew all of the

6

participants." *Hansen*, 262 F.3d at 1247. Rather, the United States only must show that the conspirator knew of the "general purpose of the agreement." *United States* v. *Suba*, 132 F.3d 662, 672 (11th Cir. 1998); *see also United States* v. *Deronceler*, 729 F. App'x 683, 689 (11th Cir. 2018) (unpublished) ("Whether one conspiracy or several, each co-conspirator had the same goal, cashing fraudulent checks."). As noted above, the United States also does not need to show a "formal agreement" to prove a conspiracy. *United States* v. *Gold*, 743 F.2d 800, 824 (11th Cir. 1984); *United States* v. *Clark*, 139 F.3d 485, 489 (5th Cir. 1998) ("[A] tacit understanding is sufficient.").

The United States meets its burden to prove criminal liability if it shows that the conspirator "participate[d] in some affirmative conduct designed to aid the success of the venture with knowledge that h[is] actions would further the venture." *Hansen*, 262 F.3d at 1247 (second alteration in original). Similarly, a defendant may be convicted even if he or she joined after the conspiracy began and played only a minor role in it. *Id.* Additionally, the United States does not have to show "direct contact" between the coconspirators. *Guerra*, 293 F.3d at 1286. "It is well settled that an accused conspirator's participation in a criminal conspiracy is presumed to continue until all the objects of the conspiracy have been accomplished or until the last overt act is committed by any of the conspirators." *United States* v. *Flinestone*, 816 F.2d 583, 589 (11th Cir. 1987).

### 3.    Count Two – Bank Fraud (18 U.S.C. § 1344(1))

To establish a violation of 18 U.S.C. § 1344(1), the United States must prove the following elements beyond a reasonable doubt:

1)    Johnson knowingly carried out or attempted to carry out a scheme to defraud a financial institution or to get money, assets, or other property from

7

a financial institution by using false or fraudulent pretenses, representations, or promises about a material fact;

2) the false or fraudulent pretenses, representations, or promises were material;

3) Johnson intended to defraud the financial institutions; and

4) the financial institution was federally insured.

Pattern Crim. Jury Instr. 11th Cir. OI O52 (Dec. 2025).

Knowingly engaging in a fraudulent check-cashing scheme is a well-established fact pattern for federal bank-fraud convictions. *See, e.g.*, *United States* v. *Jones*, 723 F. App'x 859, 861 (11th Cir. 2018) (unpublished); *United States* v. *Thomas*, 315 F. App'x 828, 837–38 (11th Cir. 2009) (unpublished); *United States* v. *Jones*, 136 F. App'x 337, 338 (11th Cir. 2005) (unpublished).

### 4. Counts Three through Five – Providing Contraband to a Federal Prisoner (U.S. Currency) (18 U.S.C. § 1791(a)(1) and (b)(4))

To establish a violation of 18 U.S.C. § 1791(a)(1), the United States must prove the following elements beyond a reasonable doubt:

1) Johnson was an inmate of a Federal prison or correctional facility at the time stated in the indictment;

2) Foster knowingly provided or attempted to provide a prohibited object to Johnson; and

3) providing or attempting to provide the object to Johnson violated a statute and/or a rule or order issued under a statute.

Pattern Jury Instr. 11th Cir. OI O68.1 (Dec. 2025). U.S. currency is a "prohibited object" under federal law. 18 U.S.C. § 1791(d)(1)(E).

8

**5.    Count Six – Possession of Contraband by a Federal Prisoner (Phone) (18 U.S.C. § 1791(a)(2) and (b)(4))**

To establish a violation of 18 U.S.C. § 1791(a)(2), the United States must prove the following elements beyond a reasonable doubt:

1)    Johnson was an inmate of a Federal prison or correctional facility at the time stated in the indictment;

2)    at the time, Johnson knowingly possessed the object described in the indictment; and

3)    the object was a forbidden object.

Pattern Jury Instr. 11th Cir. OI O68.2 (Dec. 2025). A phone is a "prohibited object" under federal law. 18 U.S.C. § 1791(d)(1)(F).

**B.    Evidentiary Issues**

**1.    Intrinsic Evidence**

The United States intends to present evidence of multiple acts committed and communications engaged in by the defendants throughout the period alleged in the indictment. The United States also intends to present evidence of Johnson's indictment, detention, and conviction in *Johnson I*. This evidence is intrinsic to the charged conspiracy. As the Eleventh Circuit has explained, evidence is intrinsic if it pertains to "the chain of events explaining the context, motive and set-up of the crime," and "is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States* v. *McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998). Such evidence falls outside the scope of Rule 404(b) and is admissible if it is (1) an uncharged offense or act that arose out of the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense. *United States* v.

9

*Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013) (quoting *United States* v. *Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007)); *see also United States* v. *Stabler*, 2024 WL 4357916, at *3 (11th Cir. Oct. 1, 2024) (unpublished) (same). "Evidence is inextricably intertwined if it is an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *Troya*, 733 F.3d at 1131 (quoting *United States* v. *Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989)). Intrinsic evidence is subject to Rule 403 analysis, but under that rule, the Eleventh Circuit has instructed district courts to strike the balance "in favor of admissibility." *Id.* at 1132.

### 2.    Party-Opponent Admissions (Rule 801(d)(2)(A))

The United States intends to offer into evidence numerous statements that Johnson and Foster made at various times during the alleged conspiracy—including in messages and other data extracted from cell phones and their email accounts, and in recorded jail calls—as non-hearsay party-opponent admissions under Federal Rule of Evidence 801(d)(2)(A).

The Eleventh Circuit and other courts have upheld the admission of such evidence under this rule. *See, e.g.*, *United States* v. *Williams*, 760 F. App'x 959, 965 (11th Cir. 2019) (unpublished) (admitting defendant's text messages as party-opponent admissions where evidence showed defendant "possessed and used the cellphone"); *United States* v. *Moore*, 611 F. App'x 572, 577 (11th Cir. 2015) (unpublished) (upholding admission of defendant's text messages as prior party admissions under Rule 801(d)(2)(A)); *United States* v. *Munoz*, 16 F.3d 1116, 1120 (11th Cir. 1994) ("[A] statement is not hearsay if it is the statement of the party against whom it is offered."); *United States* v. *Ramirez-Martinez*, 6 F.4th 859, 866 (8th Cir. 2021) (upholding admission of "messages sent and received" by defendant under Rule 801(d)(2)(A) where evidence "sufficiently identif[ied] [defendant] as the user of" a phone number); *United States* v. *Turner*, 934 F.3d 794, 798 (8th Cir. 2019) (holding that defendant's text messages contained "statements

10

by an opposing party, which means they are not hearsay," and that photographs were "images, not statements, so they too are not hearsay"); *United States* v. *Allison*, 908 F.2d 1531, 1534 (11th Cir. 1990) (upholding statements made by coconspirator to witness who testified about those statements at trial as admissible under Rule 801(d)(2)(A)); *United States* v. *Dadamuratov*, 340 F. App'x 540, 547 (11th Cir. 2009) (unpublished) (upholding admissibility of transcript reflecting defendant's interview with investigating officer because defendant's statements in the transcript were admissions by a party-opponent); *United States* v. *Stafford*, 143 F. App'x 531, 533 (4th Cir. 2005) (unpublished) (holding that defendant's statements to testifying coconspirator "were his own statements" and thus admissible under Rule 802(d)(2)(A)).

The rules do not, however, permit defendants to offer out-of-court statements as self-serving, exculpatory hearsay. *See, e.g.*, *United States* v. *Cunningham*, 194 F.3d 1186, 1199 (11th Cir. 1999) ("[A] defendant cannot attempt to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination." (citing *United States* v. *Willis*, 759 F.2d 1486 (11th Cir. 1985))).

### 3.    Coconspirator Statements (Rule 801(d)(2)(E))

The United States also intends to offer evidence—including evidence extracted from electronic devices and email accounts—as non-hearsay coconspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E). Admission of a coconspirator statement does not violate the Confrontation Clause because the statement is nontestimonial by its very nature. *United States* v. *Underwood*, 446 F.3d 1340, 1346–47 (11th Cir. 2006); *United States* v. *Inadi*, 475 U.S. 387, 394–96 (1986) (determining that admission of coconspirator statements furthers the Confrontation Clause's purpose to advance the truth-determining process in criminal trials).

In *Magluta*, the Eleventh Circuit set forth the standard for determining the admissibility of coconspirator statements as follows:

> For evidence to be admissible under Rule 801(d)(2)(E), the government must prove by a preponderance of the evidence these things: (1) a conspiracy existed; (2) the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) the statement was made during the course and in furtherance of the conspiracy. In determining the admissibility of co-conspirator statements, the trial court may consider both the co-conspirator's statements and independent external evidence.

418 F.3d at 1177–78. The Eleventh Circuit employs a "liberal standard" in determining whether a statement is made in furtherance of a conspiracy. *United States* v. *Beale*, 921 F.2d 1412, 1422 (11th Cir. 1991) (citing Fed. R. Evid. 801(d)(2)(E)). Moreover, "[t]he statement need not be necessary to the conspiracy, but must only further the interests of the conspiracy in some way." *Id.*

### 4.  *Bruton* v. *United States*, 391 U.S. 123 (1968)

The rule espoused in *Bruton* v. *United States*, 391 U.S. 123 (1968), will not apply to any statements the United States intends to admit at trial in this case. That is because, as the Eleventh Circuit has held, "[f]or *Bruton* to apply, a codefendant's statement must be clearly inculpatory standing alone," rather than "only when linked with evidence introduced later at trial." *United States* v. *Arias*, 984 F.2d 1139, 1142 (11th Cir. 1993) (alteration in original). The party-opponent and coconspirator statements in the United States' evidence do not violate *Bruton*. *See id.* ("Since *Bruton*, the Supreme Court has cautioned against blind application of the *Bruton* rule: 'The Confrontation Clause has never been held to bar the admission into evidence of every relevant extrajudicial statement made by a nontestifying declarant simply because it in some way incriminates the defendant.'" (quoting *Parker* v. *Randolph*, 442 U.S. 62, 73 (1979))).

### 5.  Transcripts

The United States intends to offer transcripts of certain recordings, which are admissible in evidence as a supplement to a recorded conversation to aid the jury in understanding the

recordings and identifying the speakers. *United States* v. *Costa*, 691 F.2d 1358, 1362–63 (11th Cir. 1982). To the extent that the defendants contest the accuracy of the transcripts, they "may put on evidence supporting the accuracy of [their] version or challenging the accuracy of [the United States'] version." *United States* v. *Tercier*, 835 F. App'x 471, 482 (11th Cir. 2020) (unpublished) (quoting *United States* v. *Wilson*, 578 F.2d 67, 69–70 (5th Cir. 1978)).[2]

The Court does not have to "find that the transcript is perfectly accurate prior to its admission, and a defendant's remedy for alleged inaccuracies is to offer his own transcript with proof as to why it is the better one." *United States* v. *Hogan*, 986 F.2d 1364, 1376 (11th Cir. 1993). The United States will request that the Court provide the jury with Eleventh Circuit Pattern Jury Instruction TI T3 (Dec. 2025) prior to the admission of any transcript.

### 6.    Playing Portions of Recordings & Introducing Portions of Documents & Electronic Data (Rule of Completeness)

The United States may choose to publish portions of recordings, messages, or other evidence in certain instances without playing an entire recording or presenting an entire chain of messages. This is a permissible practice, and in order for the defense to require the entire recording or set of messages be published, the defense must establish a basis to show that the additional portions are relevant and necessary to explain, qualify, or provide context for the published portions. *United States* v. *Simms*, 385 F.3d 1347, 1359 (11th Cir. 2004) (construing the rule of completeness set forth in Fed. R. Evid. 106); *United States* v. *Myers*, 972 F.2d 1566, 1575–76 (11th Cir. 1992); *see also United States* v. *Ramirez*, 658 F. App'x 949, 953 (11th Cir. 2016) (unpublished) (rejecting rule-of-completeness objection to admission of portions of defendant's text messages).

---

[2] Decisions of the former Fifth Circuit issued prior to October 1, 1981, are binding on the Eleventh Circuit. *Bonner* v. *City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

13

### 7.    Authenticity Generally (Rule 901)

The requirement of authenticity under Federal Rule of Evidence 901(a) is "generally 'satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *United States* v. *Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990) ("There need be only some competent evidence in the record to support authentication, which can consist of merely circumstantial evidence."). Stated differently, the Eleventh Circuit has determined:

> Authentication or identification under Rule 901 merely involves the process of presenting sufficient evidence to make out a *prima facie* case that the proffered evidence is what it purports to be. Once that *prima facie* showing has been made, the evidence should be admitted, although it remains for the trier of fact to appraise whether the proffered evidence is in fact what it purports to be.

*United States* v. *Caldwell*, 776 F.2d 989, 1001–02 (11th Cir. 1985) (finding district court committed error in not receiving documents where *prima facie* foundation had been laid). While the defense may speculate that someone tampered with an item of evidence, that is not a basis to remove the evidence, which is a threshold issue, from the jury's consideration. *United States* v. *Tann*, 425 F. Supp. 2d 26, 36 (D.D.C. 2006); *United States* v. *Daughtry*, 502 F.2d 1019, 1022 n.3 (5th Cir. 1974) ("[T]he mere fact that it is conceivable that tampering has occurred is not sufficient to require the exclusion of the evidence.").

Documents may also be authenticated by circumstantial evidence. *Caldwell*, 776 F.2d at 1002. Accordingly, the United States does not need to prove the "specific identity of the author" of an offered document for the document to be admissible. *United States* v. *Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990) (finding drug ledger admissible based on other circumstances even though its author was not identified); *United States* v. *Koziy*, 728 F.2d 1314, 1321 (11th Cir. 1984) (admission of documents was proper where one expert witness testified that the documents were similar to other genuine documents of that type which he had seen and another expert testified that the documents were not executed after a certain date). Showing that a party controlled, kept, or

14

had access to certain documents can establish those items' authenticity. *See Ramirez-Martinez*, 6 F.4th at 866 (finding sufficient authentication of text messages where evidence proved defendant was "user" of given phone number); *Ramirez*, 658 F. App'x at 952 (finding sufficient authentication of text messages where, among other things, phone was subscribed to defendant); *United States* v. *Carr*, 607 F. App'x 869, 876 (11th Cir. 2015) (unpublished) (describing burden to authenticate text messages as "not an onerous one"); *Munoz*, 16 F.3d at 1121 ("[Defendant's] keeping these documents is a strong indication of their authenticity."); *see also United States* v. *Am. Radiator & Standard Sanitary Corp.*, 433 F.2d 174, 192 (3d Cir. 1970) (evidence of location where notes were found and lay identification of handwriting constituted sufficient evidence of the notes' author to authenticate them for admission).

As for audio recordings introduced at trial, "the government must establish that it is an 'accurate reproduction of relevant sounds previously audited by a witness.'" *United States* v. *Singleton*, 455 F. App'x 914, 916 (11th Cir. 2012) (unpublished) (citing *United States* v. *Biggins*, 551 F.2d 64, 66 (5th Cir. 1977)). Furthermore, the speaker's voice may be identified by opinion testimony "based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." *Id*. at 917 (citing Fed. R. Evid. 901(b)(5)); *United States* v. *Albert*, 595 F.2d 283, 290 (5th Cir. 1979) (rejecting authenticity challenge to admissibility of audio tape); *United States* v. *Duncan*, 166 F. App'x 464, 467 (11th Cir. 2006) (unpublished) (admitting tape recordings of defendant where agent was able to identify defendant's voice based on interviews during the investigation); *United States* v. *Riley*, 2010 WL 1999468, at *3 (M.D. Fla. May 18, 2010) (admitting jail calls where agent personally spoke with defendant and could make proper voice identification on jail calls); *see also Brown* v. *City of Hialeah*, 30 F.3d 1433, 1437 (11th Cir. 1994)

15

("Once a witness establishes familiarity with an identified voice, it is up to the jury to determine the weight to place on the witness's voice identification.").

### 8.   Chain of Custody

At trial, the United States will introduce various forms of evidence to the jury through witnesses who obtained evidence from other persons. Any alleged gaps in the chain of custody of evidence affect only the weight of that evidence, not its admissibility. *United States* v. *Roberson*, 897 F.2d 1092, 1096 (11th Cir. 1990) ("[G]aps in the chain of custody affect only the weight of the evidence and not its admissibility. There was no evidence of tampering with this product. Under such circumstances, there is a presumption that the drugs were properly mailed to the laboratory." (citations omitted)).

### CONCLUSION

The United States expects that one or more of the legal and evidentiary issues outlined in this trial brief may manifest at trial. Accordingly, the United States submits this trial brief to preempt the need for briefing delays.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

By:

*/s/ Justin D. Roller*
Justin D. Roller
Michael R. Tabarrok
Assistant United States Attorneys
United States Attorney's Office
11 North Water Street, Suite 30100
Mobile, Alabama  36602
(251) 441-5845
justin.roller@usdoj.gov
michael.tabarrok@usdoj.gov

16

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2026, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send notification of such filing to standby counsel of

record for the defendants. I also mailed a copy of the same to the defendants located at:

Kartarius Dewan Johnson
c/o Escambia County Detention Center
316 Court Street
Brewton, Alabama  36426

Danisha Anita Foster
2970 McVay Drive North, Apartment 4108
Mobile, Alabama  36606

/s/ Justin D. Roller
Justin D. Roller
Assistant United States Attorney